**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1062-18T3

W. JAMES MAC NAUGHTON,

    Plaintiff-Appellant,

v.

SHAI HARMELECH, USA
SATELLITE & CABLE, INC.,
CABLE AMERICA, INC., and
NORTH AMERICAN CABLE
EQUIPMENT COMPANY, INC.,

    Defendants-Respondents,

and

RUSSIAN MEDIA GROUP, LLC,

    Defendant.

_____

Argued telephonically June 3, 2020 –
Decided July 8, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law
Division, Sussex County, Docket No. L-0442-12.

William J. Mac Naughton, appellant, argued the cause pro se.

Lynette Siragusa argued the cause for respondents Shai Harmelech, USA Satellite & Cable, Inc. and Cable America, Inc.

Joseph Daniel Cronin, attorney for respondent North American Cable Equipment Company, Inc.

PER CURIAM

Plaintiff W. James Mac Naughton,[1] an attorney appearing pro se, appeals from the October 5, 2018 Law Division order awarding $3185.15 in attorney's fees and costs to counsel for defendants Cable America, Inc. (Cable), its president, Shai Harmelech, and Cable's successor, USA Satellite & Cable, Inc. (USA), collectively the Harmelech defendants, as a sanction for plaintiff's failure to withdraw his frivolous complaint in accordance with Rule 1:4-8. We affirm.

This dispute originated over a decade ago and spawned litigation in both state and federal courts. In a 2013 unpublished opinion, we recounted the facts and procedural history as follows:

> Plaintiff, an attorney, represented defendants in litigation in the United States District Court for the Northern District of Illinois in 2009. Defendants fell

---

[1] Mac Naughton alternately appears as MacNaughton and Naughton in the record.

A-1062-18T3

behind on the payment of his fees and, as a result, on August 12, 2009, the parties executed a promissory note and security agreement that granted plaintiff "a security interest in all of [defendants'] right, title and interest in any and all real or personal property wherever located." The parties' agreement authorized plaintiff to sign defendants' name "to any UCC-1 or other documents reasonably necessary to perfect" plaintiff's security interest.[2] Plaintiff allege[d] that defendants breached the terms of the promissory note and security agreement.

In October 2009, in an effort to collect his unpaid fees,[3] plaintiff commenced a civil action in the United States District Court for the District of New Jersey. . . .

Defendants moved for dismissal, arguing the complaint failed to state a claim upon which relief might be granted. [Fed. R. Civ. P.] 12(b)(6). With respect to plaintiff's fourth count, which sought a declaratory judgment, District Judge Peter G. Sheridan held, in his written opinion of September 22, 2010, that the parties' August 12, 2009 agreement "did not create a security interest in [d]efendants' real property under either the Illinois Commercial Code or common law." Judge Sheridan explained that the description of the

---

[2] The security agreement also contained a severability clause, and selected New Jersey as the forum for disputes arising out of the agreement. Plaintiff filed a UCC-1 financing statement in the State of Illinois immediately after the agreements were signed.

[3] At the time, the unpaid fees totaled approximately $66,000, down from the original billed amount of $108,132.28 for costs and 333.2 hours of work over ten weeks.

 A-1062-18T3

collateral was "supergeneric"[4] and, for that and other reasons, he dismissed the fourth count.

. . . [O]n June 20, 2011, [plaintiff] executed an amended security agreement that cure[d] the "supergeneric" defect found by Judge Sheridan. He then moved to amend his federal complaint to add a count for enforcement of the amended security agreement. In an opinion filed on March 30, 2012, District Judge Esther Salas denied plaintiff's motion, concluding that plaintiff unduly delayed in asserting the claim.[5] Judge Salas did not rule on the merits of this cause of action. In her opinion, Judge Salas recognized that plaintiff's claim was based on his assertion of the right to unilaterally amend the original security [agreement] and concluded that she "need not, and does not, take a position on the validity of this legal theory."[6]

---

[4] Judge Sheridan determined the description of collateral, consisting of phrases such as "all debtor's assets" or "all debtor's property," failed to comply with the Illinois Commercial Code's requirement that "a description of collateral reasonably identif[y] the collateral." Naughton v. Harmelech, No. 09-CV-5450, 2010 U.S. Dist. LEXIS 99597, at *13-14 (D.N.J. Sept. 22, 2010) (quoting 810 Ill. Comp. Stat. § 5/9-108(b) and (c)).

[5] MacNaughton v. Harmelech, No. 09-CV-5450 (D.N.J. Mar. 30, 2012) (slip op. at 6-7).

[6] However, Judge Salas commented that Judge Sheridan had "already found the Security Agreement to be invalid and any efforts to change the terms of that agreement to circumvent this court's ruling flies in [the] face of notice, fair play, and finality." Id. at 6. Additionally, Judge Salas noted plaintiff failed to provide "any case law in support of his contention that he is entitled to unilaterally amend the central agreement to a litigation after that litigation has commenced much less after that agreement has been deemed invalid." Ibid.

4

Soon after his motion to amend the federal complaint was denied, plaintiff filed his complaint in this state action, seeking a declaratory judgment regarding the validity of the amended security agreement. Before filing an answer, defendants moved to dismiss the complaint pursuant to Rule 4:6-2(e).

[Naughton v. Harmelech, No. A-2242-12 (App. Div. Oct. 16, 2013) (slip op. at 1-4) (first and fourth alterations in original).]

The motion judge granted defendants' Rule 4:6-2(e) motion, relying in part on the entire controversy doctrine. Id. at 4-5. We reversed the order of dismissal, explaining that "the cause of action pleaded in this suit has not been adjudicated on its merits in another forum" because "Judge Salas, in the exercise of her discretion, has precluded its further consideration." Id. at 6. We "remand[ed] for consideration of the best way to manage the case to avoid the problems that the entire controversy doctrine was intended to address." Id. at 7.

As a result, the federal action proceeded simultaneously with the state action. Continuing the saga, we related in a 2018 unpublished opinion:

In 2016, plaintiff filed a motion in the federal action seeking summary judgment on the count in his second amended complaint that sought reformation of the language in the original security agreement that Judge Sheridan had found invalid. Defendants cross[-]moved to dismiss such count.

. . . .

5

. . . Judge Kevin McNulty rejected plaintiff's claim the language in the original agreement was the result of a unilateral mistake, and determined the language could not be reformed.[7] Among other things, the judge found, "[plaintiff] drafted this security agreement and pressed it upon defendants; the responsibility for its defects is his, and he cannot show that the equities tip in his favor." The judge granted defendants' motion for partial summary judgment and entered an order dismissing the count seeking reformation of the original security agreement. Plaintiff did not appeal from Judge McNulty's [July 13, 2016] order.[8]

Months later, defendants prevailed on a motion for summary judgment in the Law Division. The court entered an order on December 22, 2016 dismissing the complaint against defendants with prejudice. . . .[9]

---

[7] Mac Naughton v. Harmelech, No. 09-CV-5450, 2016 U.S. Dist. LEXIS 91658, at *36-38 (D.N.J. July 13, 2016).

[8] Notably, in September 2016, plaintiff won a $77,679 judgment against the Harmelech defendants in the federal action on the surviving count for breach of the promissory note, which judgment was paid in full on January 29, 2018.

[9] While the December 22, 2016 Law Division order granted summary judgment to the Harmelech defendants, an earlier October 26, 2016 Law Division order, which was never appealed, granted summary judgment to co-defendant North American Cable Equipment Company, Inc. (North American). When plaintiff created the amended security agreement in 2011, he included language giving himself an interest in any judgments USA obtained against North American because he became aware that USA was about to obtain such a judgment. Therefore, in his third amended complaint in the Law Division, plaintiff alleged that North American's "payment of the USA [j]udgment to USA" instead of plaintiff constituted a breach of the amended security agreement and "an act of conversion and tortious interference with contract since [p]laintiff had a

In their motion for summary judgment in the Law Division, defendants pointed out that Judge Sheridan had found the original security agreement invalid, because the description of the property in such agreement was so defective it failed to convey to plaintiff an interest in any of defendants' property. Defendants also noted Judge McNulty subsequently determined the defective language in the original agreement could not be reformed. Defendants argued the <u>amended</u> security agreement is also invalid because, although the description of the property in such agreement is more detailed, Judge McNulty's ruling precluded plaintiff from reforming the language in the original security agreement.

Defendants also noted - and plaintiff did not deny - that he had stated in a letter to defense counsel that Judge McNulty's decision "is binding on the parties in [the Law Division] and adjudicates all of the issues arising out of the same facts."

In his opposition to defendants' summary judgment motion, plaintiff did not dispute that, as a result of Judge Sheridan's ruling, the language in the original security agreement failed to provide him with an interest in defendants' property. However, he contended the other terms in the original security agreement were still valid and, because the original agreement allegedly gave him the authority to change such document, the amended agreement he created is valid.

Plaintiff also argued Judge McNulty did not rule upon his ability to create the amended security agreement and thus such agreement exists and is

_____

perfected security interest on all of [USA's] assets, including judgments rendered in its favor."

7                                                        A-1062-18T3

binding. That is, plaintiff contends the federal court neither adjudicated nor ruled he did not have the authority to unilaterally change the original agreement.

The Law Division judge determined Judge McNulty essentially found the amended agreement unenforceable, and that such decision is binding pursuant to the doctrine of collateral estoppel thereby precluding re-litigation of such issue. The Law Division judge reasoned that, because the amended security agreement does not give plaintiff a security interest in defendants' property and the claims plaintiff asserts in the third amended complaint depend upon the agreement's validity, plaintiff's claims fail as a matter of law.

[Naughton v. Harmelech, No. A-2014-16 (App. Div. Aug. 9, 2018) (slip op. at 8-11) (third and fifth alterations in original) (citation omitted).]

We affirmed the Law Division judge, Judge David J. Weaver, explaining:

As found by Judge McNulty, the language in the original security agreement that purportedly gave plaintiff an interest in defendants' property was not amenable to being altered or reformed. Therefore, even if the original security agreement gave plaintiff the authority to unilaterally change the terms of such agreement, as a matter of law Judge McNulty's decision precludes him from doing so.

Further, we reject as unsupported the premise the original security agreement provided plaintiff license to change its terms. That agreement authorized plaintiff to sign defendants' name to any UCC-1 or other document reasonably necessary to perfect the security interest in the property as defined by such agreement. However, Judge Sheridan found the definition of

property in the original agreement too indefinite to be binding; therefore, the property in which plaintiff can perfect a security interest cannot be ascertained under the terms of the original security agreement.

Last, plaintiff's authority to sign documents is limited to signing those which are reasonably necessary to perfect his security interest in the property defined by the original security agreement, not alter the terms of the original agreement and to unilaterally define the property in which plaintiff has a security interest.

[Id. at 12-13.]

On January 14, 2017, twenty-three days after Judge Weaver issued his December 22, 2016 summary judgment dismissal order, defendants filed a motion for attorney's fees under the frivolous litigation statute, N.J.S.A. 2A:15-59.1, and Rule 1:4-8(b). In support, defendants relied on a letter dated September 12, 2016, two months after Judge McNulty's decision, in which defendants had notified plaintiff that he was "engaging in frivolous litigation" and "advised that sanctions would be sought unless the complaint" was "dismissed with prejudice within [twenty-eight] days of th[e] letter" as required under Rule 1:4-8(b)(1). The letter specified that because "[t]he factual allegations in the [c]omplaint lacked evidentiary support" and "ha[d] already been litigated [through] the federal courts in both New Jersey and Illinois involving the same set of facts, the same parties and the same allegations against

9

[defendants]," the "principles of res judicata and collateral estoppel" applied. Further, defendants asserted "that this matter [was] brought for the sole purpose of harassment and/or retaliation for events occurring in prior actions."[10]

In a responding letter dated September 17, 2016, plaintiff wrote:

> I am writing in response to your letter dated September 12, 2016 asking for the withdrawal of [p]laintiff's claims against [defendants] in this action. I agree the disposition of <u>Mac Naughton v. Harmelech et al</u>[.], Index No. 09-5450, DNJ is binding on the parties in this case and adjudicates all of the issues arising out of the same facts. I am prepared to enter into a consent order to that effect. Are you?

Judge Weaver denied defendants' motion for attorney's fee sanctions without prejudice because plaintiff had filed a notice of appeal from the December 22 dismissal order on January 19, 2017, and the judge therefore lacked jurisdiction. <u>See</u> <u>R.</u> 2:9-1(a). On August 27, 2018, eighteen days after we affirmed Judge Weaver's decision, defendants re-filed their motion for

---

[10] Notably, after the original fee dispute arose in 2009, that resulted in plaintiff withdrawing from representing defendants in a lawsuit filed against them by Russian Media Group (RMG), the case subsequently settled with RMG obtaining a consent judgment against defendants. Thereafter, plaintiff's relentless efforts to collect unpaid fees from defendants included acquiring rights to the RMG consent judgment, the very matter in which plaintiff previously represented defendants, ultimately resulting in the entry of orders in federal court disqualifying plaintiff from attempting to collect on that judgment.

attorney's fee sanctions. On October 5, 2018, following oral argument, Judge Weaver granted defendants' motion.

In an oral decision from the bench, initially, the judge rejected plaintiff's procedural argument that defendants' motion should be dismissed as untimely.[11] Acknowledging that the motion was filed three days late, Judge Weaver relied on Gooch v. Choice Entertaining Corp., 355 N.J. Super. 14 (App. Div. 2002) and Rule 1:1-2 to relax Rule 1:4-8(b)(2)'s filing deadline and concluded the time limitation should not preclude an "otherwise meritorious" application. The judge pointed out that "the Appellate Division . . . ha[d] indicated a willingness . . . to relax th[e] rule, and the factual similarities" between Gooch and this case were "striking."

Turning to the merits, after reciting the relevant procedural and factual history, Judge Weaver emphasized that Judge McNulty specifically held that the amended security agreement "was invalid and unenforceable." Further, Judge Weaver's decision that collateral estoppel foreclosed the re-litigation of the issue, which was affirmed on appeal, relied on Judge McNulty's decision, not Judge Salas'. Thus, Judge Weaver rejected as "inappropriate" plaintiff's

---

[11] Under Rule 1:4-8(b)(2), "[a] motion for sanctions shall be filed with the court no later than [twenty] days following the entry of final judgment."

continued reliance "on th[e] language from [Judge] Salas' decision" in his opposition to defendants' motion. Further, according to the judge, "plaintiff's own letter" of September 17, 2016 "contradicts his reliance on the language of the Salas opinion . . . because he . . . admits that the Federal District Court decision is binding on all the parties."

Finding that plaintiff's September 17, 2016 letter was "the best evidence," and supported defendants' assertions that the complaint "was frivolous, . . . and [plaintiff] knew it was frivolous," Judge Weaver concluded plaintiff's "position was untenable and . . . frivolous" under Rule 1:4-8. After considering the applicable factors, including the timing of defendants' motion, and "limit[ing] th[e] sanction to a sum sufficient to deter repetition of such conduct," Judge Weaver awarded $3185.15 in fees and costs to defendants' counsel, and this appeal followed.

On appeal, plaintiff argues he "had an honest and good faith belief" in the merits of his action based on "th[e] language" in our 2013 decision that the amended security agreement claim could not be adjudicated in the federal action "'because Judge Salas . . . precluded its further consideration.'" He asserts he "justifiably relied on this language to argue [that] Judge McNulty's decision on the [r]eformation [c]laim" had no "preclusive effect on the [a]mended [s]ecurity

12

agreement [c]laim," and he "had no way of knowing in 2016 when he opposed [d]efendants' summary judgment motion" that "the Appellate Division would later reverse itself and rule Judge McNulty's disposition of the [r]eformation [c]laim necessarily decided the [a]mended [s]ecurity [a]greement [c]laim."

Further, according to plaintiff, his September 17, 2016 letter was "not a concession [that] Judge McNulty had the jurisdiction to decide the [a]mended [s]ecurity [a]greement [c]laim." Plaintiff also contends that Judge Weaver erred by exempting defendants "from the deadline set by [Rule] 1:4-8(b)(2)," and by "direct[ing] the payment of fees directly to counsel" instead of the client, against whom plaintiff could purportedly offset the fees with "outstanding and unresolved claims against the Harmelech [d]efendants."

Rule 1:4-8 and the frivolous litigation statute, N.J.S.A. 2A:15-59.1, authorize sanctions, including reasonable attorney's fees, against any party. The frivolous litigation statute provides that a prevailing party:

> in a civil action, either as [a] plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
>
> [N.J.S.A. 2A:15-59.1(a)(1).]

To find a complaint frivolous:

> [T]he judge shall find on the basis of the pleadings, discovery, or the evidence presented that either: (1) The complaint . . . was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or (2) The nonprevailing party knew, or should have known, that the complaint, . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
>
> [N.J.S.A. 2A:15-59.1(b).]

"[A]n assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009) (quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)). "Where a party has [a] reasonable and good faith belief in the merit of the cause, attorney's fees will not be awarded." Perez, 391 N.J. Super. at 432. However, "continued prosecution of a claim or defense may, based on facts coming to be known to the party after the filing of the initial pleading, be sanctionable as baseless or frivolous even if the initial assertion of the claim or defense was not." Iannone v. McHale, 245 N.J. Super. 17, 31 (App. Div. 1990) (applying N.J.S.A. 2A:15-59.1).

Nonetheless,

> [r]elief under this statute has been approached cautiously, so that while baseless litigation will be

14

deterred, "the right of access to the court should not be unduly infringed upon, honest and creative advocacy should not be discouraged, and the salutary policy of the litigants bearing, in the main, their own litigation costs, should not be abandoned."

[Gooch, 355 N.J. Super. at 18 (quoting Iannone, 245 N.J. Super. at 28).]

While Rule 1:4-8 requires the motion for sanctions "to be made within twenty days after judgment," we have determined that in certain circumstances, "it is appropriate to relax the rule." Gooch, 355 N.J. Super. at 19 (citing R. 1:1-2 (permitting the relaxation of "any rule" if "adherence to it would result in an injustice")); Horowitz v. Weishoff, 318 N.J. Super. 196, 207 (App. Div. 1999), aff'd as modified, remanded, 346 N.J. Super. 165 (App. Div. 2001) (assessing a monetary sanction when the movant had "complied with the procedural requirements of [Rule] 1:4-8(b) to the extent that compliance was possible."). "In reviewing the award of sanctions pursuant to Rule 1:4-8, we apply an abuse of discretion standard," Zahabian, 407 N.J. Super. at 390 (citing Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)), and will only reverse an award if it "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error of judgment." Masone, 382 N.J. Super. at 193 (citing Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

15

Here, we discern no abuse of discretion in Judge Weaver's imposition of attorney's fee sanctions. Plaintiff's third amended Law Division complaint depended entirely on the enforceability of the amended security agreement. Notwithstanding Judge McNulty's July 2016 decision that the amended security agreement was unenforceable and plaintiff's unilateral reformation attempt invalid, plaintiff continued his litigation and refused to withdraw the complaint despite receiving defendants' September 2016 demand letter to do so and conceding that the federal court decision was binding on all parties and adjudicated all issues. See Gooch, 355 N.J. Super. at 19-20 (affirming "the imposition of sanctions under the frivolous litigation statute" and "relaxation of the [Rule] 1:4-8(b)(2) time limits" where the non-prevailing party, "an attorney appearing pro se," pursued a "defamation claim in the face of . . . absolute immunity" and, "as an officer of the court, knew, or should have known, the law regarding immunity").

To the extent any argument raised by plaintiff has not been explicitly addressed in this opinion, it is because the argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION